# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 11, 2015

Lyle W. Cayce
Clerk

No. 14-31109

In the Matter of:  GULF STATES LONG TERM ACUTE CARE OF COVINGTON, L.L.C.,

Debtor

------------------------------

DAVID V. ADLER,

Appellant

v.

GREGORY D. FROST; BREAZEALE, SACHSE & WILSON, L.L.P.,

Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CV-1659

Before HIGGINBOTHAM, DAVIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Appellant David V. Adler ("Adler") appeals the district court's order dismissing his common-law tort and contract claims against Appellees Gregory D. Frost ("Frost") and Breazeale, Sachse & Wilson, L.L.P. ("BSW") for lack of standing. Adler also appeals the district court's order denying his motion to reconsider its order dismissing his claims. For the following reasons, we affirm.

I.

Gulf States Long Term Acute Care of Covington, L.L.C. ("Debtor"), a long-term healthcare facility in Louisiana, filed for bankruptcy under Chapter 11 of the Bankruptcy Code. BSW, a law firm, and Frost, a partner in BSW's Baton Rouge office, represented Debtor in several financial transactions related to its continuing operations prior to bankruptcy. Neither Frost nor BSW served as Debtor's bankruptcy counsel in the chapter 11 case, however. Frost and BSW also represented Debtor's co-manager and several other defendants in a related derivative lawsuit. Those defendants are not parties to this appeal. The parties agree that neither Frost nor BSW was a creditor in Debtor's bankruptcy case.

The bankruptcy court ultimately confirmed Debtor's Third Amended Plan of Reorganization (the "Plan"). The Plan contains a provision that purports to retain Debtor's standing to pursue avoidance actions and fraudulent transfer actions against a list of named defendants. That list does not include Frost or BSW.

The Plan also contains a different provision that purports to preserve "[a]ny and all other claims and causes of action which may have been asserted by the Debtor prior to the Effective Date" of the Plan. However, that provision does not specifically describe any "other claim[] or cause[] of action" that Debtor intends to retain.

No. 14-31109

Each of the Plan's claim retention provisions purports to authorize a disbursing agent to pursue claims on Debtor's behalf for the benefit of unsecured creditors. The bankruptcy court appointed Adler to serve as Debtor's disbursing agent.

After the bankruptcy court confirmed the Plan, Adler commenced an adversary proceeding in the bankruptcy court in which he asserted various common-law tort and contract claims against Frost and BSW.[1] Adler alleged that Frost and BSW, "[i]n connection with and during" their representation of Debtor,

> (1) engaged in legal malpractice; (2) deliberately conspired with the Debtor's managers and their officers and directors; and (3) knowingly participated in a scheme to defraud Debtor, its minority owners, and its creditors of Debtor's assets for the benefit of companies owned and controlled by other clients of Frost and BSW. This scheme resulted in the looting of [Debtor] of an amount in excess of Five Million Dollars ($5,000,000.00) and [Debtor]'s ultimate demise.

The district court then withdrew the reference to the bankruptcy court, so that the district court would rule on the adversary proceeding instead of the bankruptcy court.

Frost and BSW moved to dismiss Adler's claims against them. They argued that Adler lacked standing to pursue his claims because the Plan and the accompanying disclosure statement failed to specifically and unequivocally retain them. The district court agreed and accordingly dismissed Adler's claims against Frost and BSW.

Adler then returned to the bankruptcy court, seeking, among other things, a clarification that the Plan specifically reserved his claims against

---

[1] Adler also brought common-law and avoidance actions against several other defendants in that suit, but those defendants are not parties to this appeal.

3

No. 14-31109

Frost and BSW. The bankruptcy court denied that request because the district court's order dismissing those claims was "binding on the parties and this Court and cannot be collaterally attacked." However, the bankruptcy court also ruled that Adler did have standing to pursue claims against several other non-creditor defendants who are not parties to this appeal.

Armed with the bankruptcy court's opinion, Adler moved the district court to reconsider its order dismissing his claims against Frost and BSW. Adler argued that it would be anomalous to allow him to pursue his claims against the other non-creditor defendants, but not against Frost and BSW, who also were not creditors of Debtor. The district court disagreed and accordingly denied Adler's motion for reconsideration.

Adler now appeals both the district court's order dismissing his claims and its order denying his motion for reconsideration.

## II.

The district court granted Frost and BSW's motion to dismiss Adler's claims pursuant to Federal Rule of Civil Procedure 12(b)(1), so we will review the dismissal order *de novo*.[2] "We review a district court's denial of a motion for reconsideration for abuse of discretion."[3] "This court interprets the terms of a bankruptcy reorganization plan . . . *de novo* and holistically."[4]

---

[2] *United States v. Renda Marine, Inc.*, 667 F.3d 651, 655 (5th Cir. 2012) (citing *LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005)).

[3] *LeClerc*, 419 F.3d at 412 n.13 (citing *Westbrook v. C.I.R.*, 68 F.3d 868, 879 (5th Cir. 1995)).

[4] *Evercore Capital Partners II, L.L.C. v. Nancy Sue Davis Trust (In re Davis Offshore, L.P.)*, 644 F.3d 259, 263 (5th Cir. 2011) (citing *New Nat'l Gypsum Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 219 F.3d 478, 484 (5th Cir. 2000)).

No. 14-31109

III.

Ordinarily, when a bankruptcy court confirms a chapter 11 reorganization plan, the bankruptcy estate ceases to exist, and the debtor (or its representative) loses its authority to pursue claims on behalf of the estate.[5] However, section 1123(b)(3)(B) of the Bankruptcy Code allows a reorganization plan to "provide for . . . the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any . . . claim or interest" belonging to the debtor or to the estate.

In *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351 (5th Cir. 2008) ("*United Operating*"), we held that "[a]fter confirmation of a plan, the ability of the debtor" or its representative "to enforce a claim once held by the estate is limited to that which has been retained in the plan."[6] "If a debtor has not made an effective reservation, the debtor has no standing to pursue a claim that the estate owned before it was dissolved."[7] "For a debtor to preserve a claim, the plan must expressly retain the right to pursue such actions. The reservation must be specific and unequivocal."[8] A "blanket reservation of 'any and all claims'" is insufficient to preserve the debtor's standing to sue.[9] This rule is intended to (1) promote the efficient administration of the bankruptcy estate and (2) provide creditors the

---

[5] *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355 (5th Cir. 2008).

[6] *Id.* (brackets omitted) (quoting *Paramount Plastics, Inc. v. Polymerland, Inc. (In re Paramount Plastics, Inc.)*, 172 B.R. 331, 333 (Bankr. W.D. Wash. 1994)).

The Court may also consult the disclosure statement accompanying the reorganization plan to determine whether the post-confirmation debtor has standing. *Spicer v. Laguna Madre Oil & Gas II, L.L.C. (In re Tex. Wyo. Drilling, Inc.)*, 647 F.3d 547, 551 (5th Cir. 2011). Here, however, the disclosure statement accompanying the Plan contains no additional information regarding the Plan's claim retention provisions that would afford Adler standing to pursue his claims against Frost and BSW.

[7] *United Operating*, 540 F.3d at 355.

[8] *Id.* (citations and internal quotation marks omitted).

[9] *Id.* at 356.

No. 14-31109

information they need to intelligently vote for or against a proposed chapter 11 plan.[10]

IV.

The district court concluded that the Plan did not specifically and unequivocally retain Adler's claims against Frost and BSW, and therefore dismissed the claims for lack of standing. Adler argues that he has standing to pursue his claims because the *United Operating* doctrine does not apply with full force where, as here, the debtor's representative sues defendants who were not creditors of the debtor and therefore were not entitled to vote on the debtor's reorganization plan. Adler contends that, notwithstanding *United Operating*, a blanket reservation of "any and all claims" is sufficient to retain a claim against a defendant if (1) the defendant is a non-creditor and (2) the reorganization plan clearly identifies how the proceeds of the claim will be distributed. Adler therefore asks us to announce an exception to *United Operating* that this Court has not previously recognized.

We have no occasion to consider whether such an exception exists because Adler did not properly raise this argument in the proceedings below.

> [I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal.[11]

Adler did not ask the district court to recognize his proposed exception to *United Operating* in his response to Frost and BSW's motion to dismiss. Instead, Adler advanced an entirely different argument: that the Plan was

---

[10] *Id.* at 355 (citations omitted).

[11] *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 n.4 (5th Cir. 1996) (quoting *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994)).

sufficiently specific and unequivocal because (1) the Plan mentioned a related derivative lawsuit and (2) Frost and BSW represented the defendants in that lawsuit. In other words, Adler argued that he should win under the traditional *United Operating* standard; he did not argue that the traditional *United Operating* standard should not apply at all. Adler also argued that his claims would benefit rather than harm the creditors, but that too is very different from asking the district court to hold that the *United Operating* doctrine is categorically inapplicable to a large subset of potential defendants that a debtor might sue post-confirmation. Adler did briefly state in his response that Frost and BSW, unlike the creditors, "are not a notice consideration in the Plan," but that passing observation "merely intimate[s]" the argument Adler now raises on appeal.[12] In sum, there is a major difference between the arguments that Adler briefed in his response and the argument that *United Operating* should not apply in this case whatsoever.[13] The district court therefore had no opportunity to consider the exception that Adler now proposes.

We acknowledge that Adler thoroughly discussed the proposed exception to *United Operating* in his motion for reconsideration. However, this Court "will not consider an issue raised for the first time in a Motion for Reconsideration."[14]

---

[12] *See id.* (quoting *Mijalis*, 15 F.3d at 1327).

[13] The substantial difference between Adler's arguments before the district court and Adler's argument on appeal distinguishes this case from *Dallas Gas Partners L.P. v. Prospect Energy Corp.*, 733 F.3d 148 (5th Cir. 2013) and *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992), which Adler cites in his reply brief.

[14] *Lincoln Gen. Ins. Co. v. De La Luz Garcia*, 501 F.3d 436, 442 (5th Cir. 2007) (citations and internal quotation marks omitted).

No. 14-31109

Thus, we will consider only the question preserved for appeal: whether the Plan specifically and unequivocally reserves Adler's claims against Frost and BSW under the traditional *United Operating* framework.

V.

In the absence of an exception that would render the *United Operating* doctrine inapplicable in this case, Adler clearly lacks standing to pursue his claims, as Adler's counsel all but conceded at oral argument. The Plan's reservation of "[a]ny and all other claims and causes of action which may have been asserted by the Debtor prior to the Effective Date" is exactly the sort of blanket reservation that is insufficient to preserve the debtor's standing.[15] Because the Plan does not set forth the legal basis of Adler's claims against Frost and BSW, Adler lacks standing to pursue them.[16]

Although the Plan purports to retain avoidance actions and fraudulent conveyance actions against certain named defendants, an explicit reservation of *avoidance actions* is insufficient to reserve a debtor's standing to pursue *common-law claims*.[17] Because Adler's claims against Frost and BSW are common-law tort and contract claims rather than avoidance or fraudulent conveyance actions, the Plan does not specifically and unequivocally preserve them.

Adler also unsuccessfully argued before the district court that the Plan's

---

[15] *United Operating*, 540 F.3d at 356. *Accord Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring Inc.)*, 714 F.3d 860, 865 (5th Cir. 2013) ("Neither the Plan nor the disclosure statement references specific state law claims for fraud, breach of fiduciary duty, or any other particular cause of action. Instead, the Plan simply refers to all causes of action, known or unknown. As noted, such a blanket reservation is not sufficient to put creditors on notice.").

[16] *See Compton v. Anderson (In re MPF Holdings US LLC)*, 701 F.3d 449, 455 n.4 (5th Cir. 2012) ("[The requirement] that the reorganization plan set forth the legal basis for the reserved claims . . . was the core holding of *United Operating*.").

[17] *See SI Restructuring*, 714 F.3d at 865.

passing references to the aforementioned derivative lawsuit and to a D&O policy were sufficient to retain his claims against Frost and BSW. Adler does not pursue those arguments on appeal. In any event, the district court correctly rejected them.

We therefore affirm the district court's order dismissing Adler's claims against Frost and BSW for lack of standing. We likewise conclude that the district court did not abuse its discretion by denying Adler's motion for reconsideration.

AFFIRMED.